## Case No. 6,038.

### The HANSA.

### [7 Blatchf. 288.] [1]

Circuit Court, S. D. New York. June 11, 1870.[2]

COLLISION—STEAMSHIPS—CROSSING UNDER RISK
OF COLLISION.

1. The rule, that, where two ships under
steam are crossing, so as to involve risk of col-
lision, the ship which has the other on her star-
board side, shall keep out of the way of the
other, enforced and applied.

[Cited in Clare v. Providence & S. S. Co., 20
Fed. 536; Meyers Excursion & Nav. Co. v.
The Emma Kate Ross, 41 Fed. 828.]

2. Embarrassment by proximity to vessels at
anchor is not an excuse for not observing such
rule, where there is no justification for being in
such proximity.

3. The not slackening of speed by the ves-
sel bound to observe such rule, condemned;
and the keeping of her course by the other ves-
sel, approved.

[Cited in The City of Panama, Case No. 2,-
764; The State of Alabama, 17 Fed. 853;
The Lepanto, 21 Fed. 669.]

[See The Albemarle, Case No. 135.]

In admiralty.

William Jay Haskett, for libellants.
Washington Q. Morton, for claimants.

WOODRUFF, Circuit Judge. The counsel
for the claimants has argued this case with
very great ability and skill. The rules of mari-
time law, which he urges with great zeal, are,
for the most part, unquestionable. My ex-
amination of the testimony has brought me,
however, to the same conclusion upon the
facts which is stated with great clearness and
force in the opinion of the district judge be-
fore whom the cause was tried below. [Case
No. 6,036.] No additional testimony was
taken in this court, and I do not think I
should state the grounds of decision more
satisfactorily if I were to discuss the evidence
in detail.

It is not questioned that the Hansa was nav-
igated in entire disregard of the rule which,
when two ships under steam are crossing, so
as to involve risk of collision, requires that
the ship which has the other on her starboard
side shall keep out of the way of the other.
The master of the Hansa, from the moment
he saw the Transporter off his starboard
bow, was apprehensive of collision, and yet
did absolutely nothing with a view to avoid
it until the collision was inevitable, but con-
tinued to advance with undiminished speed,
from six to nine miles an hour, according to
the varying estimates of the claimants' own
witnesses, he, as is justly to be inferred from
his own testimony, relying upon an expecta-
tion, or at least trusting to a hope, that the
Transporter would change her course.

The effort is ingeniously and zealously
made to excuse the non-observance of the

rule by the Hansa, by denying its applica-
bility to her when she was greatly embar-
rassed by the vicinity of numerous vessels
at anchor, which it was necessary that she
should avoid. That embarrassment is en-
titled to consideration, and, if the Hansa had
done what she could under the circumstances,
would have great weight, notwithstanding
the doubt created by the conflict of testi-
mony, as to whether near the place of col-
lision there were any vessels which were a
hindrance to her appropriate effort to avoid
the Transporter by passing to the eastward
of her. But no sufficient excuse can be found
for her advancing among those vessels lying
at anchor, if they were even as numerous as
her master states, and attempting to pass the
bow of the Transporter at a speed which her
own pilot estimates at nine miles an hour,
or at the speed of six or seven miles an hour,
as her other witnesses judge, when she had
the Transporter in full view, according to her
master's own statement, for half a mile.

The excuse for not moving more slowly,
and by that means more carefully, which her
master states, is, that it was necessary that
she should have the speed she maintained in
order to have steerage way. But the pilot
testifies that she was manageable at a speed
of three miles an hour, and, in an ebb tide
running three miles an hour in the opposite
direction, it would be very extraordinary if
the statement of the pilot were not correct. It
gave her practically a motion relatively to
the water of six miles an hour, and there
must be some very extraordinary reason if
she could not have been safely steered with
less than that. I am compelled to reject the
excuse and to say, that if, instead of hop-
ing that the Transporter would change her
course, the Hansa had slackened speed, she
might safely have picked her way among the
vessels at anchor and passed safely to the
eastward of the Transporter, and that it was
her duty to do so. In short, the proof fails
to satisfy me that there was any sufficient
embarrassment to justify her in disregarding
the rule. Doubtless, it was more convenient
for her to take her usual course up and along
the west side of the river. That was the
most direct route to her berth at Hoboken,
but such convenience must yield to rules de-
vised for general observance and to secure
safety to others.

The suggestion is plausible, that the Trans-
porter was easily managed, and readily
turned to starboard or port, and that, in cir-
cumstances of danger, instant and active
effort should have been made by her. The
rule is very well, but here, if I am right in
my previous conclusion, the master of the
Transporter saw and could see no reason on
his part for not observing the rule which,
while it required the Hansa to avoid the
Transporter, required the Transporter to keep
her course. When the peril became immi-
nent, she appears to have done all that was
possible to avert the consequences.

---

[1] [Reported by Hon. Samuel Blatchford, Dis-
trict Judge, and here reprinted by permission.]

[2] [Affirming Case No. 6,036.]

I am constrained to regard the fault as wholly on the part of the Hansa. The decree must, therefore, be affirmed.